United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WALTER BARTLETT,                        No C 05-03568 VRW

    Plaintiff,
                                        ORDER
       v

MICHAEL J ASTRUE, Commissioner of
Social Security,

    Defendant.

_____

      Plaintiff Walter Bartlett brings this action under 42 USC
section 405(g), challenging the final decision of the Social
Security Administration (SSA) denying him disability insurance
benefits (DIB) from June 23, 1998 through September 30, 2001.
Plaintiff claims disability based on a lower back condition.  The
court now considers cross-motions for summary judgment.  Pl Mot
(Doc #9); Def Mot (Doc #10).  Because the court concludes that
plaintiff did not overcome the presumption of non-disability that
resulted from a previous final decision by the SSA, the court
DENIES plaintiff's motion and GRANTS defendant's motion.

//

**United States District Court**
For the Northern District of California

I

Plaintiff was born on July 25, 1952 and is a high school graduate.  Administrative Record (AR), Doc #8 at 453, 484.  He worked for eleven years as a basement attendant, crane operator and tractor driver at a steel mill before suffering a lower back injury on the job in May 1985.  AR 37, 479.  As a result, plaintiff experienced lower back and leg pain.  AR 69.  On January 21, 1987 he filed for DIB under Title II of the Social Security Act (Act).  Id.  Plaintiff was diagnosed with lumbar spinal stenosis with a ruptured disc and nerve root damage.  AR 229-33.  An Administrative Law Judge (ALJ) found plaintiff "disabled" within the meaning of the Act because his impairment prevented him from "[performing] basic work activities at any exertional level."  Id.

Dr Kenneth Light, an orthopedic surgeon, treated plaintiff beginning in September 1992.  AR 314-58.  On April 20, 1993, Dr Light performed spinal fusion surgery and repair of the pelvis using a graft of plaintiff's thigh bone.  AR 349.  Plaintiff improved initially, but fusion of the spine remained incomplete and there was breakage of one of the small rods placed to align his spine.  AR 328.  Dr Light performed another surgery to repair the fusion and reinsert rods and screws on December 6, 1994.  Id.

A year following the last surgery, Dr Light noted that x-rays showed a healed spine and solid fusion, and that "[plaintiff] walks on a regular basis * * * [without] relief [from] pain medication to date."  AR 321.  Plaintiff continued to complain

//

//

//

2

United States District Court

For the Northern District of California

of pain and intermittent collapsing of his right leg, but on March
13, 1996 Dr Light wrote:

> there is no patient who has reconstruction of
> the spine and is perfectly asymptomatic. * * *
> This man is willing to return to work at the
> steel mill in a job that does not require heavy
> bending and lifting.  I think his spine is
> strong enough to accept this level of physical
> activity. * * * He would not be able to lift
> more than 30 lbs and should avoid frequent
> bending.  Other than that, I think he is capable
> of driving a variety of vehicles at the mill and
> should be capable of returning to work in some
> capacity.

AR 314.

Dr Light's conclusion prompted the SSA to issue a
Continuing Disability Review decision to discontinue plaintiff's
disability insurance because his condition had improved and because
based on his age, education and past work experience, he could
perform light work.  AR 245-47.  Plaintiff requested
reconsideration which included a hearing before a disability
hearing officer.  AR 248.  After taking testimony and receiving
medical records, the hearing officer found that plaintiff's
condition did not meet any listing in the Listing of Impairments in
the Social Security regulations and that plaintiff was able to
perform light work not requiring frequent stooping and crouching.
AR 260-66.

Plaintiff requested a hearing before an ALJ which took
place on March 19, 1998.  AR 26-68, 272.  At the ALJ's directive,
plaintiff saw orthopedic surgeon Dr Lisa Sandusky on April 18, 1998
for a consulting evaluation.  AR 65, 374-76.  Although plaintiff
described "some right lower extremity weakness," Dr Sandusky
determined, <u>inter</u> <u>alia</u>, that plaintiff could "stand for [up to] 2

3

United States District Court
For the Northern District of California

hours at a time without a break"; "walk on an occasional basis at work"; "sit up to 4 hours without a break"; "lift, pull and push up to 40 lbs on an occasional basis and may lift, pull and push 25 lbs on a frequent basis"; and that "[he has] no limitations on tasks that require fine motor skills."  Id.

On June 29, 1998, the ALJ issued a decision stating that plaintiff's condition had improved and that he could engage in substantial gainful activity.  AR 11-24.  The SSA Appeals Council denied review.  AR 5-6.  Plaintiff then sought judicial review in the United States district court for the Northern District of California.  <u>Bartlett v Barnhart</u>, #C 00-02541 MJJ.  On February 13, 2002, the court upheld the ALJ's decision.  AR 420.  Plaintiff did not appeal that decision to the court of appeals.

On March 22, 2002, plaintiff applied for another period of DIB ending September 30, 2001, his date last insured.  AR 453-57.  Plaintiff initially alleged disability beginning on May 29, 1985, but later amended his alleged onset date to June 23, 1998.  Id.  Plaintiff added knee pain as an impairment because he underwent right knee surgery in December 2000 to treat a staph infection.  AR 453-57, 602-04.  The SSA denied plaintiff's request on May 29, 2002 and again on September 10, 2002.  AR 437-40, 442-45.

Plaintiff then timely requested a hearing before an ALJ which took place on August 21, 2003.  The ALJ took testimony from plaintiff and from vocational expert (VE) John Velton.  AR 446, 712-98.  At the hearing, plaintiff testified to the medical treatment and medication he received.  In an attempt to explain the sparse medical evidence showing he was taking pain medication,

4

United States District Court

For the Northern District of California

plaintiff testified that his brother-in-law, allegedly a doctor, gave him medication.  AR 748-49.  He described his life as "boring" and testified that he "hurts so bad [he] can't do anything" with his days except eat and prepare meals and watch television.  AR 768-80.

The VE determined that jobs existed in significant numbers in the national economy that plaintiff could perform consistent with his medically determinable impairments, functional limitations, age, education and work experience.  AR 394-95.  Based on plaintiff's testimony and the hypothetical limitations provided by the ALJ, the VE testified to several jobs plaintiff could perform.  AR 786-88.  Specifically, with plaintiff's ability to perform only light work with alternate sitting and standing, and without frequent bending or stooping, the VE responded with three possible vocations with the sit/stand at will option required by plaintiff's condition: (1) cashier II, of which there were 130,000 nationally and 3,000 locally; (2) survey worker, with 22,000 nationally and 500 locally; and (3) gate guard, with 36,000 nationally and 800 locally.  AR 394, 786-88.

On October 30, 2003, the ALJ issued an eight-page ruling concluding that plaintiff had not demonstrated "changed circumstances" arising during the period from June 23, 1998 (the date of the first ALJ's decision) through September 30, 2001, the date plaintiff was last eligible for disability benefits under Title II.  AR 389-96.  The ALJ noted that the denial of benefits through June 23, 1998 was binding and the judgment entered against plaintiff in the district court barred consideration of claims of disability prior to that date and created "an ongoing presumption

United States District Court
For the Northern District of California

that [plaintiff] was able to work beyond the date of that
decision." AR 391.  To warrant a new finding of disability, the
ALJ explained, plaintiff had the burden of showing that his
condition had deteriorated from June 23, 1998 forward.  Id.

Specifically, the ALJ concluded that although plaintiff
suffered from "severe" medically determinable impairments
(degenerative disc disease of the lumbar spine status post back
surgery and status post staphylococcus aureus infection in the
right knee), these did not meet or equal a listing in the Listing
of Impairments found at 20 CFR Part 404, Subpart P, Appendix 1,
because plaintiff's medical records did not "describe limitation of
motion in the spine with motor loss and sensory or reflex loss, as
required by [listing 1.04]."  Id.  The ALJ also found no evidence
in plaintiff's medical records of an inability to ambulate
effectively as required by listing 1.02 and concluded that "the
medical findings * * * [were] not equal in severity and duration to
any Listed findings."  AR 392.

The ALJ underscored the fact that plaintiff sought
minimal medical treatment for his back pain during the relevant
time period.  Id.  He noted that plaintiff's fourth back surgery in
March 2003, occurred nearly eighteen months after the last date of
Title II eligibility and plaintiff had sought no medical treatment
regarding his spine between February 1999 and October 2002.  AR
393.  The ALJ deemed significant that although a computed
tomography (CT) scan in February 1999 showed spinal stenosis and
some degeneration of the L3-4 disc, it also showed that the fusion
at L4-S1 was solid and neurological reports showed plaintiff's
//

United States District Court
For the Northern District of California

1   neurological status as normal and unchanged since August 1998.  AR
2   392.

3            Furthermore, to the extent that plaintiff was alleging he
4   could not perform light work, the ALJ rejected plaintiff's alleged
5   subjective disabling symptoms because of, inter alia: (1) the
6   minimal amount of treatment received for his back and knee
7   conditions between February 1999 and October 2002; (2) his ability
8   to do work around the house and to hunt and fish on occasion; (3)
9   his participation in 4-H club meetings; (4) his ability to drive
10  short distances; and (5) the lack of evidence showing he was taking
11  pain medication.  AR 393, 792.  The ALJ also noted inconsistencies
12  in the record regarding plaintiff's knee condition.  AR 392.
13  Plaintiff initially reported to the emergency room physician that
14  he did not recall a "precipitating traumatic event" giving rise to
15  his knee swelling, but later stated that his injury was due to a
16  fall.  Id.  In fact, laboratory testing showed that the swelling
17  and pain in his knee stemmed from a staph infection.  Id.  X-rays
18  and a physical examination showed only "minimal degenerative
19  changes" and "unimpaired functioning in the legs with no
20  neurological deficits" and after a procedure in December 2000 to
21  remove the infection, plaintiff received no additional treatment
22  for his knee.  Id.  Consequently, the ALJ found plaintiff's
23  residual functional capacity (RFC) unchanged since the prior final
24  decision.  AR 395.

25           Accordingly, the ALJ concluded that plaintiff's condition
26  had not substantially deteriorated so as to prevent him from
27  working for any twelve-month period during the period June 23, 1998
28  through September 30, 2001.  AR 392.  The SSA's Appeals Council

United States District Court

For the Northern District of California

1  denied plaintiff's request for review, making the ALJ's decision

2  final.  AR 380-83.  On September 6, 2005, plaintiff commenced the

3  instant action for judicial review of the final decision.

4

5                                    II

6              The court's jurisdiction is limited to determining

7  whether the SSA's denial of benefits is supported by substantial

8  evidence in the administrative record.  42 USC § 405(g).  A

9  district court may overturn a decision to deny benefits only if the

10 decision is not supported by substantial evidence or is based on

11 legal error.  Thomas v Barnhart, 278 F3d 947, 954 (9th Cir 2002).

12 Substantial evidence is more than a scintilla but less than a

13 preponderance; it is such relevant evidence as a reasonable mind

14 might accept as adequate to support a conclusion.  Id.  The ALJ's

15 decision must be upheld where it is free of legal error, even if

16 the evidence is susceptible to more than one rational

17 interpretation.  Id.  The court reviews the administrative record

18 as a whole.  Andrews v Shalala, 53 F3d 1035, 1039 (9th Cir 1995).

19 Determinations of credibility, resolution of conflicts in medical

20 testimony and all other ambiguities are to be resolved by the ALJ.

21 Id.

22             To be eligible for SSA disability benefits, plaintiff

23 must demonstrate that he was "unable to do any substantial gainful

24 activity by reason of any medically determinable physical or mental

25 impairment which can be expected to result in death or which has

26 lasted or can be expected to last for a continuous period of not

27 less than 12 months."  20 CFR § 404.1527.

28 //

                                      8

United States District Court
For the Northern District of California

1    To determine whether a claimant is disabled and entitled

2 to benefits, the SSA conducts a five-step sequential inquiry.  20

3 CFR § 404.1520.  Under the first step, the ALJ considers whether

4 the claimant is currently employed in substantial gainful activity.

5 If not, the second step examines whether the claimant has a "severe

6 impairment" that significantly affects his or her ability to

7 conduct basic work activities.  In step three, the ALJ determines

8 whether the claimant has a condition which meets or equals the

9 conditions outlined in the Listing of Impairments in 20 CFR Part

10 404, Subpart P, Appendix 1, and if so, the claimant is presumed

11 disabled.  20 CFR § 404.1520.  If the claimant does not have such a

12 condition, step four asks whether the claimant can perform his past

13 relevant work.  If not, in step five, the ALJ considers whether the

14 claimant has the ability to perform other work which exists in

15 substantial numbers in the national economy.  20 CFR §§

16 404.1520(b)-(f); §§ 404.920(b)-(f).

17    The claimant bears the burden of proof at steps one

18 through four.  Bustamante v Massanari, 262 F3d 949, 953-54 (9th Cir

19 2001).  At step five, the burden of proof shifts to the SSA to show

20 there are jobs in the national economy that the claimant is capable

21 of performing.  Id.  When there has been a denial of disability

22 benefits in a prior final decision, there is a presumption of non-

23 disability in subsequent proceedings.  See Miller v Heckler, 770

24 F2d 845, 848 (9th Cir 1985).  Accordingly, the burden continues to

25 be on the claimant who must make a showing of "changed

26 circumstances" since the date of the prior final decision.  See

27 Booz v Secretary of Health and Human Services, 734 F2d 1378, 1379

28 (9th Cir 1983).

United States District Court

For the Northern District of California

          Pursuant to 42 USC § 405(h), the findings and decision of
the SSA after a hearing shall be binding upon all individuals who
were parties to such a hearing.  Under 42 USC § 405(g), a claimant
can request judicial review of a decision by the SSA and the
judgment of a United States district court shall be final except
that it shall be subject to review in the same manner as a judgment
in other civil actions.

                                   III

          In support of his motion, plaintiff contends that: (1)
substantial evidence does not support the ALJ's conclusion that
plaintiff's alleged impairments did not meet or equal any listings
in the Listing of Impairments; (2) the ALJ did not fully and fairly
develop the record; (3) substantial evidence does not support the
ALJ's evaluation of plaintiff's subjective reports of disabling
symptoms; (4) the ALJ improperly failed to consider lay witness
testimony; and (5) the ALJ improperly determined that plaintiff
could perform other work.  The court addresses each of these
contentions in turn.  The court, however, notes that a consistent
motif in plaintiff's briefs is his attempt to introduce medical
evidence from before 1998.  The court disregards this irrelevant
evidence and accompanying arguments because plaintiff did not
appeal the district court's adverse judgment in Bartlett v Apfel,
#C 00-2541 MJJ, affirming the ALJ's June 23, 1998 decision denying
disability benefits to plaintiff and therefore creating a
presumption of non-disability from that date through September 30,
2001, plaintiff's date last insured.
//

United States District Court

For the Northern District of California

1

**A**

2          Plaintiff contends that substantial evidence does not

3    support the ALJ's conclusion that plaintiff's impairments do not

4    meet or equal various musculoskeletal listings in the Listing of

5    Impairments as set forth at 20 CFR Pt 404, Subpt P, App 1.  Doc #9

6    at 6; Doc #13 at 2.  The court disagrees.

7          To establish presumptive disability under the Listing at

8    step three of the sequential evaluation process, a claimant must

9    prove that his impairment (or combination of impairments) satisfies

10   all of the medical criteria.  See <u>Sullivan v Zebley</u>, 493 US 521,

11   530 (1990); see also <u>Tackett v Apfel</u>, 180 F3d 1094, 1099 (9th Cir

12   1999).  "An impairment that manifests only some of those criteria,

13   no matter how severely, does not qualify."  <u>Sullivan</u>, 493 US at

14   530.  In order to "meet" a listed impairment the claimant must

15   establish each characteristic listed, while to "equal" a listed

16   impairment the claimant must establish symptoms, signs and

17   laboratory findings at least equal in severity and duration to the

18   characteristics of a relevant listed impairment.  See 20 CFR §

19   404.1526; <u>Tackett</u>, 180 F3d at 1099.  Equivalence must be based on

20   medical findings that are supported by medically acceptable

21   clinical and laboratory diagnostic techniques.  See CFR §

22   404.1526(b); <u>Tackett</u>, 180 F3d at 1100.  The ALJ must review a

23   claimant's symptoms and make specific findings essential to a

24   conclusion of an impairment not meeting or equaling a listing.  See

25   <u>Gonzalez v Sullivan</u>, 914 F2d 1197, 1200 (9th Cir 1990).  If there

26   is an adequate basis from which to draw such a conclusion, the ALJ

27   is not required to "state why a claimant failed to satisfy every

28   different section of the listing of impairments."  See id at 1201.

**United States District Court**
For the Northern District of California

1    In order to meet Listing 1.04 (disorders of the spine), a

2   claimant must demonstrate:

3       (A) Evidence of nerve root compression characterized
        by neuro-anatomic distribution of pain, limitation
4       of motion of the spine, motor loss (atrophy
        associated muscle weakness or muscle weakness)
5       accompanied by sensory or reflex loss and, if there
        is involvement of the lower back, positive straight-
6       leg raising test (sitting and supine); or

7       (B) Spinal arachnoiditis, confirmed by an operative
        note or pathology report of tissue biopsy, or by
8       appropriate medically acceptable imaging, manifested
        by severe burning or painful dysesthesia, resulting
9       in the need for changes in position or posture more
        than once every 2 hours; or

10
        (C) Lumbar spinal stenosis resulting in
11      pseudoclaudication, established by findings on
        appropriate medically acceptable imaging, manifested
12      by chronic nonradicular pain and weakness, and
        resulting in inability to ambulate effectively
13      * * *.

14  20 CFR Pt 404, Subpt P, App 1, § 1.04.

15    Plaintiff maintains that "the record is clear that [he]

16  has established all aspects of this listing."  Doc #13 at 3.  In

17  support of this contention, however, plaintiff cites evidence

18  reviewed and rejected by the court in <u>Bartlett v Apfel</u>, #C 00-02541

19  MJJ, as well as evidence of medical treatment sought <u>after</u> his last

20  date insured.  Both types of evidence are irrelevant to the time

21  period at issue on this appeal.  Doc #9 at 6-7.  The scant evidence

22  plaintiff cites that does involve the period at issue is not

23  relevant to his spinal condition or consists of his own reports of

24  disabling pain symptoms which cannot be used to establish a listed

25  impairment.  Id; AR 36-79, 504-27, 598-600, 606, 608, 610.  General

26  assertions of functional disability are not enough to establish

27  disability at step three.  <u>Tackett</u>, 180 F3d at 1100.

28  //

United States District Court
For the Northern District of California

Contrary to plaintiff's assertion, the record contains substantial evidence from which the ALJ could conclude that plaintiff did not satisfy listing 1.04.  The ALJ documented the absence of evidence of limitation of motion in the spine combined with motor loss and sensory or reflex loss and/or of inability to ambulate effectively.  AR 391-92.  The Listing of Impairments defines "ineffective ambulation" as "having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device."  20 CFR Pt 404, Subpt P, App 1, § 1.00B2b.  There is no evidence in the record that plaintiff required the use of a hand-held assistive device.  Moreover, plaintiff sought no treatment for his spine between February 17, 1999 and his date last insured.  AR 474, 593-600, 606, 648-49.

Even though plaintiff is represented by counsel, plaintiff's briefs demonstrate significant confusion regarding basic social security law concepts.  For example, plaintiff asserts – not once but several times – that the ALJ contradicted himself and committed legal error by finding that plaintiff had a "severe impairment" at step two, then denying plaintiff disability benefits at step three.  Doc #9 at 8-9.  Satisfying step two, however, is merely a prerequisite for the inquiry to proceed to step three; "disability" within the meaning of the SSA can never be found before step three.  See 20 CFR § 404.1520.  Many claimants found to have "severe" impairments at step two are nonetheless unable to establish disability in subsequent steps.

Next, plaintiff cites Young v Sullivan, 911 F2d 180 (9th Cir 1990) and Orteza v Shalala, 50 F3d 748 (9th Cir 1995), perhaps thinking they somehow support his position.  In doing so, plaintiff

United States District Court
For the Northern District of California

makes critical mistakes of fact and law.  Doc #9 at 6-7.  Plaintiff seems to argue that he should have been found disabled because the impairments the claimants suffered from in <u>Young</u> and <u>Orteza</u>, both of which were found insufficient to support an award of benefits, were less severe than his.  They could do household chores and drive, while plaintiff purportedly could not.  Id.

The court does not follow plaintiff's logic in citing <u>Young</u> and <u>Orteza</u>.  The claimants in those cases suffered from different impairments and set forth different arguments from plaintiff and were ultimately denied benefits.  Moreover, these cases stand for little more than the bedrock principle of social security benefits law that an ALJ's determination need only be supported by substantial evidence to be upheld on judicial review.  Even the factual comparison plaintiff  makes between his case and <u>Young</u> and <u>Orteza</u> does not support his argument; ironically, the evidence before the court shows that plaintiff engaged in a wide range of similar activities, including household chores, walking, driving and even fishing and hunting on occasion.  AR 514-17.

Defendant notes that while plaintiff alleges that he meets or equals listing 1.04, and purports to quote from that listing at length, the language he quotes is actually from an abrogated listing, 1.05C, which no longer exists.  Doc #10 at 4.  This listing, which concerned spinal conditions, was removed from the Listing of Impairments in 2002.  Doc #10 at 4.  After defendant pointed this out, plaintiff responded that his spinal disorder meets or equals listing 1.05C and asserts – without citing legal authority - that defendant "must follow the listings of impairments as they were when [plaintiff's] impairment began * * *."  Doc #13

14

at 3.  The court has found no legal authority supporting plaintiff's argument.  Moreover, even if listing 1.05C were still part of the Listing of Impairments, the record plainly indicates that plaintiff did not satisfy 1.05C when plaintiff received a favorable decision in 1988 or when the court denied his claim in Bartlett v Apfel, #C 00-02541 MJJ.  AR 229-34, 422-32.

Plaintiff also baldly asserts that his knee impairment meets or equals listings 1.02 or 1.03.  Doc #9 at 6.  But nowhere in the record is there evidence that the incision in plaintiff's right knee in December of 2000 prevented him from ambulating effectively for a continuous period of 12 months.  In fact, as defendant correctly points out, "plaintiff has not articulated any facts to support these assertions."  Doc #10 at 4.  Accordingly, substantial evidence supported the ALJ's conclusion that plaintiff did not meet or equal a listing in the Listing of Impairments.

B

Plaintiff contends that the ALJ did not fully and fairly develop the record, but offers no details of this alleged lapse.  See Doc #9 at 7.  Given that plaintiff's brief is peppered with record citations from time periods and medical conditions not at issue on this appeal, the court surmises that plaintiff intends to challenge the ALJ's omission of this irrelevant evidence.

It would, of course, be error for the ALJ to decline to consider evidence relating to plaintiff's date of disability onset merely because that evidence dated from after plaintiff's date last insured.  Lester v Chater, 81 F3d 821, 832 (9th Cir 1995); see also Smith v Bowen, 849 F2d 1222, 1225 (9th Cir 1988).  After all, "[i]t

United States District Court
For the Northern District of California

is obvious that medical reports are inevitably rendered retrospectively * * *." Smith, 849 F2d at 1225.  The court also recognizes, however, that any "deterioration in [plaintiff's] condition subsequent to [his date last insured] is, of course, irrelevant." Waters v Gardner, 452 F2d 855, 858 (9th Cir 1971). Likewise, evidence based on observations and medical reports made prior to a previous final decision to deny benefits is also irrelevant.  See Miller v Heckler, 770 F2d 845, 848 (9th Cir 1985).

Plaintiff's alleged disability onset date is June 23, 1998, the date of the SSA's original decision denying him disability benefits.  Plaintiff's date last insured was September 30, 2001.  AR 629.  The ALJ noted that although plaintiff experienced some back pain in August 1998, X-rays showed solid fusion in the lower back.  AR 651.  In February 1999, tests revealed spinal stenosis and narrowing of the spinal canal.  AR 649.  Plaintiff's treating orthopedist noted that plaintiff's "neurological examination has been normal" and that his pain "is not sharp all the time and for this reason we have suggested that nothing be done about it at present."  Id.  Plaintiff did not seek further treatment for his spine until October 22, 2002, more than three and a half years later.  AR 648.  Plaintiff's fourth back surgery took place nearly eighteen months after his date last insured.  AR 638-39.  There is no evidence that plaintiff received pain medication for his spinal condition during the relevant time period.  AR 647-49.  Moreover, after the surgery to plaintiff's right knee in December 2000, the treating physician noted that plaintiff was "discharged home in satisfactory condition."  AR 602. //

United States District Court
For the Northern District of California

Accordingly, the court finds that the ALJ fully and fairly developed the record by properly considering the relevant evidence in making his determination.

C

Plaintiff argues that the ALJ improperly rejected plaintiff's testimony alleging disabling pain symptoms.  See Doc #9 at 10; Doc #13 at 3-5.  Once a claimant has established an underlying medical impairment which could be reasonably expected to produce some subjective symptoms, an ALJ must give specific, clear and convincing reasons to reject allegations of subjectively disabling symptoms to allow a reviewing court to determine whether the ALJ did so on permissible grounds.  See Bunnell v Sullivan, 947 F2d 341, 345-46 (9th Cir 1991); Thomas v Barnhart, 278 F3d 947, 959-60 (9th Cir 2002).  An ALJ may consider various factors in assessing the credibility of the allegedly disabling subjective symptoms.  See 20 CFR § 404.1529.  Such factors include: a claimant's ability to perform numerous daily activities; a failure to seek treatment; the nature, location, onset, duration, frequency, radiation, and intensity of the alleged disabling pain; and ordinary techniques of credibility evaluation.  See id; Bunnell, 947 F2d at 346-47.

The ALJ thoroughly and specifically documented his reasons for rejecting plaintiff's allegations of subjective disabling symptoms.  AR 389-96.  Plaintiff's medical treatment between June 23, 1998 through September 30, 2001 was minimal.  AR 393, 648-51.  After his alleged onset date, plaintiff sought medical treatment for his spine on three occasions between August

1998 and February 1999 and did not seek treatment again until
October of 2002.  AR 648-52.  The ALJ also noted that there was no
evidence that plaintiff received pain medication for his spine
during this time period.  AR 389-96, 647-49.

Plaintiff forcefully contends that he sought medical
treatment and was on pain medication; in doing so, however, he
ignores the relevance of both the time period in which he sought
medical treatment and of the conditions he sought it for.  Doc #9
at 10-11; Doc #13 at 3-4.  It is true that plaintiff did seek
medical treatment from February 1999 through his last date insured.
Plaintiff, however, sought treatment for a minor finger injury,
vertigo, ear congestion, blood pressure and a knee infection that
healed soon after treatment.  AR 593-610.  Although plaintiff
sought treatment for his spine, he did not do so until nearly
eighteen months <u>after</u> his date last insured.  AR 648.

The medical records from plaintiff's doctor visits during
the relevant time period further undermine his contention that he
was disabled: they show that he was not taking pain medication.  AR
593.  For example, plaintiff took Keflex for a short time after his
right knee incision, but Keflex is an antibiotic that is unrelated
to the treatment of spinal conditions and does not relieve pain.
AR 595-98.  Moreover, no medical records support plaintiff's
dubious assertion that he received pain medication from his
brother-in-law, an alleged doctor.  Doc #9 at 11; AR 748.  In fact,
plaintiff's orthopedist noted in December 2002 that plaintiff was
"currently off all medications."  AR 647.

The ALJ also relied on inconsistencies in plaintiff's
testimony with other evidence in the record to discount plaintiff's

United States District Court
For the Northern District of California

18

United States District Court
For the Northern District of California

credibility.  See <u>Johnson v Shalala</u>, 60 F3d 1428, 1434 (9th Cir 1995) (ALJ may use inconsistencies within cumulative record to discount claimant's credibility).  For example, plaintiff contends that he injured his knee in December 2000 after falling because of pain in his lower back.  Doc #9 at 16.  Plaintiff's own statements and medical reports later contradicted his story.  AR 393, 585.  He told the emergency room physician that he did not recall a "precipitating traumatic event" which gave rise to his knee problems; soon thereafter, plaintiff was diagnosed with a staph infection.  AR 393, 579, 585.

The ALJ also considered the activities plaintiff could perform despite the extent of his alleged disabling pain.  AR 393. He noted that plaintiff did household chores such as cooking, laundry and mowing the lawn.  AR 393, 515, 761-62, 766.  At least four times a week, plaintiff drove fourteen miles to meet his wife for lunch at her office.  AR 515-16, 520.  The record further shows that plaintiff hunted and fished on occasion, served as a 4-H club leader and raised beef cattle.  AR 515, 517, 758.

Plaintiff correctly asserts that trivial discrepancies should not be relied upon to discredit a claimant's credibility.  Doc #13 at 3.  Nonetheless, the inconsistencies in plaintiff's testimony with other evidence in the record can hardly be characterized as trivial.  The ALJ needs only substantial evidence on which to base his conclusion and the ALJ's interpretation of plaintiff's testimony need not be the only reasonable one.  See <u>Rollins v Massanari</u>, 261 F3d 853, 857 (9th Cir 2001).  The court disagrees with plaintiff's assertion that "the only conclusion one can come to is * * * favorable to [plaintiff]," Doc #13 at 5, and

**United States District Court**
For the Northern District of California

accordingly finds that the ALJ properly made specific and convincing findings in rejecting plaintiff's reports of disabling pain symptoms.

D

Plaintiff argues that the ALJ improperly failed to consider lay witness evidence in the form of statements made by plaintiff's sister and parents.  He perfunctorily cites <u>Howard v Barnhart</u>, 341 F3d 1006, 1012 (9th Cir 2003), and <u>Vincent v Heckler</u>, 739 F2d 1393, 1395 (9th Cir 1984) for the proposition that "under prevailing case law," not addressing statements by plaintiff's sister and parents was harmful error.  This argument is without merit.

The ALJ is not required to address every piece of evidence so long as the ALJ's decision is supported by substantial evidence.  See <u>Howard</u>, 341 F3d at 1012; <u>Vincent</u>, 739 F2d at 1395. While the ALJ did not address the written statements made by plaintiff's sister and parents, AR 552, 555, the unaddressed statements did not substantiate any of plaintiff's claims during the relevant time period and the limited insight they appear to offer is, at best, cumulative.  Accordingly, because there was substantial evidence to support the ALJ's decision, the court concludes that not addressing all the lay witness testimony was not error.  See 20 CFR §§ 404.1513(d)(4) & (e); see also <u>Burch v Barnhart</u>, 400 F3d 676, 679 (9th Cir 2005) (recognizing the concept of harmless error within the Social Security context).

//

//

20

**United States District Court**
For the Northern District of California

                                    E

          Plaintiff contests the ALJ's residual functional capacity
(RFC) finding and asserts that the ALJ improperly determined that
plaintiff could perform other work.  Doc #9 at 16-17.

          As noted above, the final decision denying plaintiff
disability benefits on June 23, 1998, together with the judgment in
Bartlett v Apfel, #C 00-0254 MJJ affirming that decision, created a
presumption of non-disability. See 42 USC § 405(g)-(h); Miller v
Heckler, 770 F2d 845, 848 (9th Cir 1985).  A claimant's RFC
describes the most an individual can do despite his or her
limitations.  20 CFR § 404.1545.  In the prior decision, the ALJ
determined that plaintiff retained the RFC for "light work" as
defined by 20 CFR 404.1567(b), with alternate sitting and standing
and without frequent bending or stooping.  AR 392.  Accordingly,
the burden continued to rest with plaintiff to demonstrate "changed
circumstances" since the date of that decision.  See Booz v
Secretary of Health and Human Services, 734 F2d 1378, 1379 (9th Cir
1983).  Because the court has already determined that the record
contains substantial evidence from which the ALJ could reasonably
conclude that plaintiff's condition had not deteriorated between
June 23, 1998 through September 30, 2001, the ALJ's RFC finding is
supported by substantial evidence.  AR 393-95.

          Since plaintiff did not meet his burden, the ALJ could
have made a determination of non-disability without having to show
that other jobs exist in the national economy which plaintiff could
perform.  See Booz, 734 F2d at 1379-80.  Nonetheless, the ALJ
presented a hypothetical to the VE correctly summarizing
plaintiff's limitations and the VE testified that plaintiff was

still capable of performing other jobs in the light work category,
including a cashier and a survey worker.  AR 393-95, 786-87.

IV

        The ALJ's decision was supported by substantial evidence
in the record as a whole and was based on correct legal principles.
For the foregoing reasons, the court affirms the ALJ's decision to
deny benefits.  Accordingly, the court DENIES plaintiff's motion
for summary judgment (Doc #9) and GRANTS defendant's motion for
summary judgment (Doc #10).

        The clerk is directed to enter judgment in favor of the
defendant and against plaintiff, to close the file and to terminate
all pending motions.


        IT IS SO ORDERED.


                                _____
                                VAUGHN R WALKER
                                United States District Judge